Hough, J.
The affidavit was drawn and the prosecution instituted under Section 3 (Section 6212-15, General Code) of the act known as the Crabbe Act (108 O. L., pt. 2,1182). This appears from the affidavit itself, and it as well as the fact that the case does not come within any exception mentioned in the act is conceded in the record.
Prosecution is based upon oral conversation between the accused and one Meyers, which took.place, as appears above, in the Avalon Hotel in Norwalk, Huron county, Ohio.
The conversation as it took place was developed by the testimony of Meyers, called by the state, and the further testimony of two secret service operatives, who claimed to have overheard the conversation between Meyers and the accused. Conflict exists as to who opened the conversation, but irrespective of such conflict accused said he had good Oscar Pepper whiskey; that it was worth $14 a quart; and that, he would bring Meyers a quart that evening or in the morning.
It makes little difference which party initiated the conversation. The essential questions here are:
*288 1. Did the affidavit charge an offense under that section of the Crabbe Act ?
2. Was there evidence that the accused solicited any intoxicating liquor?
The first of these questions is made and saved in the record by a general demurrer to the affidavit, arid the latter by a motion to arrest the testimony.
Reviewing the testimony from the bill of exceptions it might with propriety be said that the evidence was quite meager and by no means convincing or satisfying; but apparently the trial court thought otherwise, and we make no inquiry into its weight or sufficiency. Such evidence as appears tends to support the allegation of the affidavit that Kiefer “then and there did solicit an order for intoxicating liquor.”
It appeared that Kiefer said he had whiskey, and the inference to be drawn was that he would part with it at $14 a quart. No whiskey was sold or delivered so far as the record shows. That, however, would not be necessary to support the charge in the affidavit. The solicitation might have been made and the sale or delivery consummated, or there might merely have been an agreement, executory in nature, or even a refusal or declination by the other party, and under proper circumstances the charge “did solicit an order for” still be supported.
But how does such a charge harmonize with, and such proof tend to support, an offense provided for by statute “to solicit any intoxicating liquors?” That is coneededly what is contended for here, and is the character of the offense relied upon by the state; that is to say, that the legislature dealing with the phrase “to solicit any intoxicating liquors” in *289 tended it to apply to the solicitation of an order for intoxicating liquor. And the illustration is made that soliciting insurance by an insurance agent in fact means soliciting an order for insurance.
The legislature must be presumed to have used the term it used in its clear, unambiguous, and generally accepted meaning, unless there appears something in the context or surrounding circumstances clearly justifying a different use or meaning.
Examining the dictionary definition of the word “solicit” we find that it has been given the meaning “to solicit orders,” but such construction is given secondary and perhaps the least accepted preference.
Another thing that may be mentioned with profit, as having at least some bearing upon the legislative intent, is the fact that a former act passed by the general assembly, but subsequently disapproved on referendum and therefore never effective, dealt with this subject. The text of the act may be found in 108 Ohio Laws, part 1, page 388. Section 4, on page 389, seems to sustain the same or a similar relation to that act as the section under consideration in the instant case sustains to the Crabbe Act, and therein the term “solicit” does not appear.
In Section 27 of that act, on page 400, the legislature provided that it shall be unlawful for any person to solicit any orders for or purchases of intoxicating liquors, etc. And again in Section 13223, General Code, passed several years before, and without any reference to its present effect or operation, it is provided: “Whoever * * * solicits orders for,” etc. These two illustrations simply show that the legislature has previously had this subject before it, and the presumption must obtain that the *290 legislature knew how it desired to deal with that subject. And now in enacting the Crabbe Law, it indulges in a change of language from “solicit orders for intoxicating liquors” to “solicit any intoxicating liquors,” and this court is asked to put such construction upon this particular term used in the Crabbe Act as will make it synonymous with the language of the former acts.
The contrary would seem to be the better reasoning — and that the legislature recognized that there was a distinction, and used the term now before us for construction with no misunderstanding of its meaning or effect.
The word “solicit” is defined in the standard dictionaries as meaning: “to apply to for obtaining something;” “to try to obtain;” “to seek to acquire,” etc. The thing to be obtained in this case was clearly whiskey. Did Kiefer apply to anybody to obtain whiskey, did he try to obtain whiskey, or did he seek to acquire whiskey? There isn’t any indication in the testimony to this effect. On the contrary, the proof all points to the fact that he had the whiskey himself, and the most that can be said is that he was attempting to, or was willing to, dispose of it to Meyers for a price.
To solicit any intoxicating liquors presupposes that the one soliciting has none,, or at least wants more, that he is in a receptive mood to receive, acquire, or have delivered to him the article under consideration, while to “solicit an order” comprehends or infers that the party soliciting has or controls the article and is willing to sell, deliver, or transfer it to the party solicited.
*291 The statute deals with or includes numerous acts that may be the basis of the offense, among which are to sell, barter, deliver, furnish, receive, give away, prescribe, possess and solicit, all of which fundamentally involve at least two persons in the transaction, or prospective transaction. For instance, to receive intoxicating liquors there must necessarily be someone from whom it is received, and to sell there must be a buyer; and the term of the statute in one instance may refer to a person in one relation, while in another the term may relate solely to the other person to the attempted transaction.
We are led to the conclusion, therefore, that the word “solicit” as used in this statute expresses a clear intent on the part of the legislature to refer to the person desirous of obtaining intoxicating liquors.
Under such view it must become apparent that the charge in the affidavit does not conform to the offense provided in the statute, and the proof, while tending to support the affidavit, does not tend to support the offense defined by the statute.
Under such circumstances, undoubtedly the trial court should have sustained the demurrer; and, failing in this, he should have sustained the motion to arrest the testimony.
The case must therefore be reversed.

Judgment reversed.

Marshall, C. J., Wanamaker, Robinson, Jones, Matthias and Clark, JJ., concur.